Filed 4/23/26  P. v. Bautista CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>NATIVIDAD MANZANO BAUTISTA,<br>        Defendant and Appellant. | C102423<br><br>(Super. Ct. No. 23FE014450) |

A jury found defendant Natividad Manzano Bautista guilty of multiple crimes after he repeatedly punched and stabbed one victim and stabbed another victim.  The trial court sentenced him to eight years in state prison.  Defendant appeals, arguing the court prejudicially erred when it (1) relied on the same facts twice (dual use) to impose both a three-year enhancement, as well as the upper term on counts one and three, and (2) found he lacked remorse and relied on that factor in imposing the upper term.  We agree and will vacate the sentence and remand the case for further litigation as may be necessary, and a full resentencing.  We otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2023, defendant was arrested after he repeatedly punched and stabbed Silvia and stabbed her daughter, H.  He was charged with multiple crimes as a result, and the case proceeded to jury trial.

1

At trial, the prosecution presented evidence regarding a family dispute involving Silvia. Defendant asked Silvia about the dispute and tapped her shoulder. Silvia told him not to involve himself and not to touch her; he then punched her in the face causing her to fall backwards. He straddled her body and continued to punch her. She felt him cutting her arms using a sharp object and she tried to push him off her. H. saw that Silvia's arms were bleeding and yelled for help. When H. tried to push or hit defendant, he turned away from Silvia and grabbed H. by the shoulders; he stabbed her under her armpit with what appeared to be a knife he was holding. Silvia tried to separate the two and pulled defendant back, bringing them both to the ground. Defendant got on top of Silvia again and punched her and stabbed her in the face and neck with the blade.

Defendant ran away, leaving Silvia bleeding. A witness saw defendant in the kitchen washing blood from his hands and arms. When arrested, he still had dried blood on his hands, arms, and face.

Various witnesses for the defense testified that Silvia grabbed, slapped, hit, choked, and pushed defendant, and defendant responded only by pushing or slapping Silvia. Defendant testified that when he arrived home that night, Silvia was walking in the street screaming, and when he tried to talk to her, she strangled him and H. hit him in the back. After about 10 minutes, he broke away from Silvia and saw blood on himself. He did not know how Silvia became injured and claimed he never attacked her or washed any blood from his hands. He admitted he had a nail clipper with a three-inch fold-out knife in his pocket but said he never used it against Silvia. He testified that he drank several beers that night and felt drunk; a blood test later revealed he had an approximate blood-alcohol level of 0.12 percent at the time of the crimes.

Silvia sustained cuts to her back that required stitches to her arms and face; she spent two days in the hospital and testified that she was scarred and required further treatment. H. required stitches to her arm and still had pain and scarring.

2

The jury found defendant guilty of battery causing serious bodily injury on Silvia (Pen. Code, § 243, subd. (d); count one),[1] the lesser offense of simple battery on H. (§ 242; count two), assault with a deadly weapon on both Silvia and H. (§ 245, subd. (a)(1); counts three & four), and child endangerment (§ 273a, subd. (a); count five). It found true as to counts three and four the allegation that defendant inflicted great bodily injury (GBI) (§ 12022.7, subd. (a)) and as to counts one, three, four, and five, the aggravating factors that (1) the crimes involved great violence or great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1) and (2))[2] defendant used a weapon (rule 4.421(a)(2)). It rejected the allegation that defendant took advantage of a position of trust or confidence. (Rule 4.421(a)(11).)

During his interview for the probation report, defendant admitted he had been drinking the day of his arrest. Regarding the details of the incident, he related "it was all an 'injustice' " and "anything said was not true"; he also denied harming H.

The report set forth the jury's findings of aggravating factors and noted in mitigation that defendant had an insignificant criminal record; his criminal history consisted of convictions for driving under the influence in 2018 and driving without a license in 2023. The report recommended the low term of two years on count three, with a three-year enhancement for GBI; one year consecutive on count four (one-third the middle term); the low term of two years on count one, stayed (§ 654); 180 days on count two, stayed (§ 654); and two years on count five, stayed (§ 654), for an aggregate sentence of six years in state prison.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Undesignated rule references are to the California Rules of Court.

At the sentencing hearing, the trial court stated that it had considered the probation report and low term recommendation for count three (assault with a deadly weapon on Silvia, with a GBI enhancement, the principal term), but the court was inclined to impose the *upper* term of four years based on the jury's true finding of the aggravating circumstance set forth in rule 4.421(a)(1).[3] The court added that it would consider other aggravating factors that reasonably relate to the defendant or other circumstances under which the crime was committed under rule 4.421(c). The court explained: "Based upon that criteria, the Court is particularly disturbed about the defendant's utter failure to accept responsibility for his actions, his lack of remorse and his attitude that he has somehow been done a terrible injustice despite the jury's verdicts beyond a reasonable doubt. [¶] The Court further considered the defendant's complete and utter failure to be truthful in his perjurious testimony when he [denied] any involvement in the infliction of Silvia and [H.'s] injuries."

Defense counsel disputed the court's reliance on rule 4.421(a)(1), noting "the great bodily harm and/or a threat of great bodily harm are encompassed, number one, within the GBI enhancement, so I think that would be an inappropriate dual use of facts, and the 273a also has a physical harm element to it. [¶] So because it's an element of the offense and we did not have a special verdict form from the jury to differentiate whether they were finding callousness or viciousness, I'm not sure that the Court can consider that as an aggravating factor." Counsel also objected to the court's determination of an aggravating factor under rule 4.421(c) based on defendant's lack of remorse or acceptance of responsibility, arguing that defendant may not have given perjured testimony because, given evidence of multiple witnesses, "it may very well be that he

---

[3] Rule 4.421(a)(1) requires that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."

was simply drunk and that is his recollection of the events." Counsel did not object to the fact that the aggravating circumstance of remorse had not been presented to the jury.

After the People submitted on their sentencing brief, the trial court explained: "[T]he only factors that the Court considered in aggravation was the aggravating factor that the defendant inflicted great bodily harm and that the crime involved great violence or other acts disclosing a high degree of cruelty, viciousness, or callousness in violation of Rule of Court 4.421(a)(1). [¶] While I understand the defense's argument that those may or may not be a part of the sentences, and the violation of the code sections themselves, perhaps, could be dual use of the facts. The Court does not believe that to be the case. [¶] The Court did not consider the prior convictions of the defendant or any of the other factors that the People put in their sentencing memorandum." The court stated it was relying on rule 4.421(a)(1) and rule 4.421(c) and *People v. Black* (2007) 41 Cal.4th 799, 817, disapproved on another ground by *People v. Wiley* (2025) 17 Cal.5th 1069, which state the court may consider circumstances in aggravation outside the Rules of Court.

After finding defendant was ineligible for probation, the trial court sentenced defendant to the upper term of four years on count three, explaining: "the jury found the allegation that the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness in violation of Rule of Court 4.421(a)(1) to be true. [¶] The Court further notes that the evidence showed that the medical treatment of Silvia required sutures through three layers of tissue alongside her chin line, all the way up to her sideburns. The Court finds this *aggravating factor of great bodily harm* outweighs the mitigating circumstance that the defendant has an insignificant record of criminal conduct such that the imposition of the lower term would be contrary to the interest of justice." (Italics added.) The court again noted defendant's "lack of remorse for the crimes" and his continued denial of "any responsibility for the crimes" and their commission.

5

In addition to the four-year upper term, the trial court imposed a three-year term pursuant to section 12022.7, based on the jury's finding that defendant personally inflicted GBI on Silvia, for a total term of seven years on count three. It added one year consecutive (one-third the middle term) for count four, assault with a deadly weapon on H., resulting in an aggregate sentence of eight years. The court imposed and stayed the sentences on the remaining counts under section 654, including a stayed upper term sentence on count one "based upon the aggravating factors found true by the jury and the other aggravating factors stated earlier."

Defendant timely appealed.

## DISCUSSION

### I

### *Dual Use*

Defendant first argues that the trial court abused its discretion by imposing upper term sentences on counts one and three while relying on the same underlying facts-- Silvia's injuries--to impose the GBI enhancement on count three. We agree.

Generally, error occurs when the same facts are considered both to aggravate the base term *and* to impose an enhancement. (*People v. Scott* (1994) 9 Cal.4th 331, 350; § 1170, subd. (b)(5) ["The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law"]; rule 4.420(g).) Here, the court imposed upper term sentences based in part on rule 4.421(a)(1), which sets forth a single aggravating factor that includes multiple possible findings, requiring that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (rule 4.421(a)(1)), and also a three-year term for the GBI enhancement (§ 12022.7). The court focused on the overlapping aspects of the GBI enhancement and the great bodily harm finding within the aggravating factor, stating that "this *aggravating factor of great bodily harm* outweighs the mitigating circumstance that the defendant has

6

an insignificant record of criminal conduct." (Italics added.) In doing so, the trial court violated the prohibition against dual use.

The People argue that the trial court could have properly found defendant's crime involved one or more of the remaining findings within the factor, such as great violence, cruelty, viciousness, or callousness, and thus there was no improper dual use of facts. However, as we have explained, the trial court referred to the aggravating factor specifically as the "great bodily harm" factor when imposing sentence, and when making the corresponding factual findings discussed no factual basis other than the victim's injuries. Thus, dual use appears.[4]

Where there is an improper dual or overlapping use of facts, remand is required if it is reasonably probable the defendant would obtain a more favorable result absent the error. (*People v. Barker* (1986) 182 Cal.App.3d 921, 941.) Here, even assuming that on remand the trial court would likely correct its erroneous reliance on the great bodily harm finding of the aggravating factor by selecting another segment of the rule clearly applicable to the facts of this case, such as "other acts disclosing a high degree of cruelty

---

[4] Although we agree with defendant that the jury instructions explaining the respective factual findings of great bodily injury and great bodily harm are nearly identical, the jury found the rule 4.421(a)(1) aggravating factor true as one item or entity. That singular factor includes the additional findings of "great violence" or " 'other acts disclosing a high degree of cruelty, viciousness, or callousness.' " All of these findings were available for the trial court to consider. To the extent defendant notes the absence of a special verdict or suggests a unanimity instruction was warranted to segment the rule 4.421(a)(1) factor such that any possibility of overlap in factual findings/later dual use of these same facts would be foreclosed, instructional error was not raised in the trial court and is not headed and briefed on appeal. Although we acknowledge that defendant's jury was not asked to specify which of the various possible findings within the aggravating factor applied to this case, and the prosecutor did not "elect" a single finding in closing argument, defendant presents no authority for the suggestion that the trial court erred in relying on the jury's verdict of true on the aggravating factor merely because the jury did not specify which finding(s) of the aggravating factor's disjunctive list it found true, where the jury was not tasked with doing so.

[or] viciousness," the rule 4.421(a)(1) aggravating factor was one of only two aggravating factors on which the trial court announced it would rely. This is problematic because a trial court may impose an upper term sentence "based on a single, properly proven aggravating circumstance [only], *if*, in the court's discretion, *that circumstance alone justifies* a sentence exceeding the middle term." (*People v. Lynch* (2024) 16 Cal.5th 730, 764 (*Lynch*).) Here, given the additional error in finding that defendant lacked remorse, which we discuss *post*, the record fails to demonstrate that the trial court viewed *any* properly found aggravating factor as sufficient to justify a sentence exceeding the middle term. Thus, absent the error, a more favorable result was likely, and the dual use error was prejudicial.

## II

### *Jury Trial Requirement*

Defendant next argues the trial court violated his right to jury trial by imposing an upper-term sentence based on the aggravating factor of lack of remorse, and that he received ineffective assistance of counsel when counsel failed to object. Defendant does not challenge the consideration of lack of remorse as an aggravating factor under rule 4.421(c), which allows consideration of any other factors which " 'reasonably relate to the defendant or the circumstances under which the crime was committed,' " but argues a violation of his right to a jury trial on that factor. We will address the claim on its merits, and find reversible error.

Section 1170, subdivision (b)(2) provides that a trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." "[W]ith the exception of prior conviction allegations, 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must

8

be found by a jury' and 'established beyond a reasonable doubt.' " (*Lynch*, *supra*, 16 Cal.5th at p. 747, citing *Cunningham v. California* (2007) 549 U.S. 270, 281.)  In *Lynch*, our Supreme Court explained that, under section 1170, subdivision (b), "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, at p. 768.)  Here, the trial court relied on its own assessment of the evidence presented during and after trial to determine that defendant lacked remorse and to impose the upper term on this basis.  In so doing, the court erred, because, as we have discussed, that aggravating circumstance was neither "stipulated to by defendant" nor "found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)

A trial court's reliance on aggravating circumstances not found in accordance with the jury trial requirement is "prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements.  If the reviewing court cannot so determine, applying the *Chapman* [*v. California* (1967) 386 U.S. 18] standard of review, the defendant is entitled to a remand for resentencing." (*Lynch*, *supra*, 16 Cal.5th at p. 768; see also *People v. Wiley*, *supra*, 17 Cal.5th at p. 1087.)  When assessing prejudice under *Chapman*, the proper inquiry is " 'whether any rational fact finder could have come to the *opposite* conclusion.' "  (*Wiley*, at p. 1090.)

Defendant contends that based on the evidence, he was drunk at the time of the crimes, a reasonable juror could have found "he was not so much remorseless as unable to reckon with his role in the incident and otherwise doing his best based on a poor recollection."  The People do not defend the error, but argue briefly that it was harmless, contending that any reasonable jury would have found the factor true, due to the "overwhelming evidence" of defendant's lack of credibility and his "indifference."

9

Our Supreme Court has cautioned against attempting to determine whether a jury would have found true aggravating circumstances that require " ' "an imprecise quantitative or comparative evaluation of the facts." ' " (*Lynch*, *supra*, 16 Cal.5th at pp. 775-776.) " 'The reviewing court cannot assume that the record reflects all of the evidence that would have been presented to the jury, or that the defendant had the same incentive and opportunity at a sentencing hearing to contest the aggravating circumstance. …"[T]o the extent a potential aggravating circumstance … rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." ' " (*Id*. at p. 775.)

Bearing this guidance in mind, we cannot conclude beyond a reasonable doubt that a jury would have found true that defendant lacked remorse. While defendant denied attacking the victims during trial and did not accept responsibility for the crimes in his interview with probation, the factor was not charged against him and thus the record has not been fully developed regarding his mental state during the crimes and other relevant times. We cannot "discount the possibility that either counsel in a contested jury trial might have presented live testimony on this factor that would have affected the jury's determination." (*People v. Wiley*, *supra*, 17 Cal.5th at p. 1091; see also *Lynch*, *supra*, 16 Cal.5th at pp. 742-743 [even if there was no error as to some aggravating factors, remand is required unless it is certain the jury would have sustained all the circumstances].) Accordingly, the trial court's reliance on lack of remorse to impose the upper term was prejudicial error. We vacate the sentence and remand for any further proceedings and a full resentencing.[5]

---

[5] Because we find prejudicial error with respect to each of the trial court's two challenged considerations, we need not and do not address cumulative error.

"Further proceedings on remand are to be conducted in accordance with the current statutory requirements and the defendant given the opportunity for the jury trial, of which he was deprived." (*Lynch*, *supra*, 16 Cal.5th at p. 777.) "On remand, the parties remain free to introduce at trial all relevant evidence to support or contest the factual support for the aggravating circumstances set out in the California Rules of Court. The court may rely on any properly proven aggravating facts, including prior convictions or facts necessarily found by the jury to support a verdict on underlying counts and enhancements. The court retains its discretion to impose an upper term sentence if it concludes that one or more properly proved circumstances justify such a sentence. (§ 1170[, subd. ](b)(2).) If it cannot so conclude, it may impose no more than a middle term." (*Id*. at pp. 777-778.)

## DISPOSITION

The sentence is vacated, and the matter is remanded to the trial court for further litigation as necessary and a full resentencing hearing. The judgment is otherwise affirmed.

/s/
DUARTE, Acting P. J.

We concur:

/s/
RENNER, J.

/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.